CITY OF LAS VEGAS, Appellant, *v.*
ROBIN LAWSON, Respondent.

No. 53900

December 30, 2010                    245 P.3d 1175

*Lynne & Associates* and *Jill M. Lynne*, Las Vegas, for Appellant.

*King, Gross & Sutcliffe, Ltd.*, and *Marvin S. Gross*, Las Vegas; *Hilbrecht & Associates* and *Norman Ty Hilbrecht*, Las Vegas, for Respondent.

Before HARDESTY, DOUGLAS and PICKERING, JJ.

## OPINION

By the Court, HARDESTY, J.:

While working as a firefighter with appellant City of Las Vegas, respondent Robin Lawson was diagnosed with breast cancer in 1997 and again in 2005. In this appeal, we first consider whether Lawson's 2005 notice of her claim for workers' compensation was timely. Because we conclude that Lawson did not learn from her

physician until 2005 that her breast cancer was related to her work as a firefighter, we conclude that she gave the City timely notice of her occupational disease claim.

Next, we consider whether the appeals officer erroneously determined that Lawson was exposed to two known carcinogens during her employment as a firefighter and that there was a "reasonable association" between the carcinogens and breast cancer. If so, under NRS 617.453, it is presumed that Lawson's breast cancer arose "out of and in the course of [her] employment." We conclude that substantial evidence supports the appeals officer's decision that one of the carcinogens falls within the statutory definition of "known carcinogen." Although we conclude that the appeals officer incorrectly determined that the other carcinogen met the statutory definition, substantial evidence still supports the finding that Lawson was exposed to the known carcinogen that does meet the definition and that the known carcinogen is reasonably associated with her breast cancer. Lawson was therefore entitled to the presumption that her breast cancer arose out of her employment, and we conclude that the City failed to rebut the presumption. Accordingly, we affirm the district court's denial of the City's petition for judicial review.

## FACTS AND PROCEDURAL HISTORY

Lawson began working for the City as a firefighter in 1992. In 1997, Lawson was diagnosed with breast cancer. She underwent treatment and missed approximately eight to nine months of work.

In December 2004, Lawson had a recurrence of her breast cancer, and she underwent a double mastectomy and chemotherapy. At a January 24, 2005, post-surgery appointment, Lawson asked her treating oncologist, Dr. Noel Rowan, "if he thought that [her] breast cancers were due to [her] occupation and due to the exposures that firefighting entails." He stated that he believed the cancer was due to her job as a firefighter and advised her to stop working. That same day, Lawson completed a "notice of injury or occupational disease," which directed her to "[b]riefly describe [the] accident or circumstances of [the] occupational disease" and "indicate the date on which employee first became aware of connection between condition and employment." Lawson answered the directive noting that the recurrence of her cancer in the right breast was "[d]ue to my job working around obvious hazardous chemicals, [multiple] carcinogens and various other [exposures] (smoke, plastic etc.)." On March 3, 2005, Lawson filed a claim for workers' compensation.

The City denied Lawson's claim for two reasons. First, the City concluded that because Lawson was first diagnosed with breast cancer in 1997, the notice that she provided and the workers' compensation claim that she submitted eight years later were un-

timely pursuant to NRS 617.342 and NRS 617.344. Second, it determined that Lawson failed to demonstrate that her cancer arose out of and in the course of her employment because "[t]here is no medical evidence that connects a known carcinogen with [breast cancer]" or that "establish[es] a direct causal connection between the cancer and [Lawson's] work performed as a firefighter." After the denial, Lawson requested a hearing before the Nevada Department of Administration, Hearings Division. *See* NRS 616C.315; NRS 616C.320.

The hearing officer concluded that "a medical question exists relative to the etiology of [Lawson's] diagnosed breast cancer" and remanded the matter to the City for a new determination, without addressing the timeliness of Lawson's claim. The hearing officer also directed that Lawson undergo an independent medical examination and provide the City with all of her medical records and the medical literature relied upon by Dr. Rowan. Dr. Ann Wierman conducted the independent medical examination and concluded that medical literature supported a link between Lawson's breast cancer and her exposure to carcinogens.

After reviewing Dr. Wierman's report and additional supplemental information, the City again denied Lawson's claim. The City determined that Lawson did not demonstrate that her breast cancer arose out of and in the course of her employment, as required by NRS 617.358. Lawson appealed to an administrative hearing officer, who affirmed the City's denial. Subsequently, Lawson appealed the hearing officer's decision. *See* NRS 616C.345.

During a hearing before the appeals officer, Lawson testified that she first became aware in January 2005 that her breast cancer was caused by her exposure to certain carcinogens. And Dr. Rowan testified that he did not know in 1997 what caused Lawson's breast cancer, but that since then he had been to medical conferences and learned about the possible connection between exposure to certain carcinogens and the development of breast cancer. He also testified that he first informed Lawson on January 24, 2005, that her breast cancer was related to her employment as a firefighter. In addition, two letters written by Dr. Rowan to Lawson's counsel were introduced into evidence. In one of those letters, Dr. Rowan concluded, "I can . . . state to a reasonable degree of medical probability that Ms. Lawson's breast cancer resulted from her employment as a combat firefighter, where she was exposed to PAH's [polycyclic aromatic hydrocarbons] and other combustion byproducts."

Following two hearings, the appeals officer concluded that Lawson provided notice of her occupational disease and filed her claim for compensation in a timely manner. The appeals officer went on

to find that Lawson was exposed to two known carcinogens, specifically, benzene and PAHs, through her employment as a firefighter, and that her exposure to those carcinogens was reasonably associated to her breast cancer. Thus, the appeals officer concluded that, under NRS 617.453(5), it is presumed that Lawson's breast cancer arose "out of and in the course of her employment as a firefighter," a presumption the City did not rebut, making Lawson's breast cancer a compensable occupational disease.

The City petitioned the district court for judicial review of the appeals officer's decision, which the district court denied. The City now appeals.

## DISCUSSION

The City argues that Lawson was first diagnosed with breast cancer in 1997, and thus her (1) 2005 written notice of an occupational disease was not filed within 7 days as required by NRS 617.342, and (2) 2005 claim for workers' compensation was not filed within 90 days as required by NRS 617.344. The City further argues that Lawson failed to prove a reasonable association between her exposure to certain carcinogens during the course of her employment as a firefighter and her breast cancer, thus making the appeals officer's decision that Lawson's breast cancer was a compensable occupational disease under NRS 617.453 erroneous.

*Standard of review*

When reviewing a district court's order denying a petition for judicial review of an agency decision, we engage in the same analysis as the district court: "we evaluate the agency's decision for clear error or an arbitrary and capricious abuse of discretion." *Law Offices of Barry Levinson v. Milko*, 124 Nev. 355, 362, 184 P.3d 378, 383 (2008). We defer to an agency's findings of fact that are supported by substantial evidence and will "not reweigh the evidence or revisit an appeals officer's credibility determination." *Id.* at 362, 184 P.3d at 383-84. "Substantial evidence exists if a reasonable person could find the evidence adequate to support the agency's conclusion." *Id.* at 362, 184 P.3d at 384. However, questions of law are reviewed de novo. *Id.*

*Lawson's notice of occupational disease and her filing of her workers' compensation claim were timely*

To recover compensation for an occupational disease, NRS 617.342(1) requires an employee to "provide written notice of an

occupational disease . . . within 7 days after the employee . . . has knowledge of the disability and its relationship to the employee's employment.'' The employee's claim for compensation must be filed ''within 90 days after the employee has knowledge of the disability and its relationship to his or her employment.'' NRS 617.344(1).

The City contends that Lawson had knowledge that her breast cancer was work-related in August 1997 and December 2004, as evidenced by Lawson's response on her notice of injury form, completed on January 24, 2005, where she stated: ''[Recurrence] of breast cancer, 1st incident 8/97 lumpectomy-chemo radiation, of right breast, 2nd incident 12/04 right breast. Due to my job working around obvious hazardous chemicals, [multiple] carcinogens and various other [exposures] (smoke, plastic etc.).'' However, the record demonstrates that, during a hearing before the appeals officer, Lawson testified that in 1997 Dr. Rowan did not believe her cancer was work-related. Dr. Rowan also testified that he did not inform Lawson that her cancer was work-related until January 24, 2005, because studies published since 1997 indicated a possible connection between carcinogens to which Lawson was exposed as a firefighter and breast cancer. Letters Dr. Rowan sent to Lawson's counsel in 2005 and 2006, indicating that he first told Lawson her cancer was work-related on January 24, 2005, were also entered into evidence.

The appeals officer found that Lawson was first informed by Dr. Rowan on January 24, 2005, that, in his opinion, there was a reasonable association between her breast cancer and her employment as a firefighter. Thus, the appeals officer concluded, Lawson provided timely notice to her employer, pursuant to NRS 617.342, as she completed the employer-notice form that same day. Additionally, the appeals officer concluded that Lawson satisfied NRS 617.344's 90-day requirement by filing her workers' compensation claim on March 3, 2005.

Although Lawson's statement on the notice of injury form gives the impression that she may have possessed the requisite knowledge in 1997, her testimony before the appeals officer, as well as Dr. Rowan's testimony and letters, shows that Lawson did not know that her cancer was work-related until January 24, 2005. It was for the appeals officer to evaluate the credibility of the witnesses, and we will not ''revisit . . . [such] credibility determination[s].'' *Milko*, 124 Nev. at 362, 184 P.3d at 384. As such, we conclude that substantial evidence in the record supports the appeals officer's decision that both the notice of occupational disease and the filing of the claim were timely because a reasonable person could have found the evidence adequate to support the conclusion.

*Proper standard to determine whether Lawson's breast cancer is a compensable occupational disease under NRS 617.453*

NRS 617.453(1) declares that cancer "is an occupational disease and compensable as such" if a firefighter shows that: "(1) [She] was exposed, while in the course of the employment, to a known carcinogen as defined by the International Agency for Research on Cancer [IARC] or the National Toxicology Program [NTP]; and (2) The carcinogen is reasonably associated with the disabling cancer."[1] NRS 617.453(1)(b). If the claimant establishes both requirements, then the "[d]isabling cancer is presumed to have developed or manifested itself out of and in the course of the employment." NRS 617.453(5).

### Lawson's exposure to known carcinogens

The City does not dispute that Lawson was exposed to benzene and PAHs.[2] However, while the City concedes that benzene is listed as a known carcinogen by both the IARC and the NTP, it argues that the appeals officer erred by concluding that PAHs are known carcinogens.

According to NRS 617.453(1)(b)(1), a claimant must demonstrate that the carcinogen to which she was exposed is "a known carcinogen as defined by the [IARC] or the [NTP]." Lawson argues, and the appeals officer agreed, that because PAHs are listed in subsection 2 of NRS 617.453 as known carcinogens for certain other types of cancers, PAHs should be considered known carcinogens for the purpose of NRS 617.453(1)(b)(1).[3] However, the statutory language clearly states that to be considered a known carcinogen, the substance must be listed in the IARC or the NTP. Therefore, if PAHs are not listed in either the IARC or NTP, they are not known carcinogens under NRS 617.453(1)(b)(1), regardless of their associations with other cancers under subsection 2.

---

[1]NRS 617.453(1)(a) also provides that the person who develops cancer must have been employed as a firefighter for at least five years. Neither party disputes that Lawson satisfied this requirement.

[2]The City does, however, argue on appeal to this court that the extent of Lawson's exposure to benzene and PAHs was insignificant. Because the City failed to properly raise this argument to the appeals officer, it is precluded from raising it now. *See Mason v. Cuisenaire*, 122 Nev. 43, 48, 128 P.3d 446, 449 (2006).

[3]NRS 617.453(2)(a) deems certain substances "to be known carcinogens that are reasonably associated with" various enumerated cancers. Although breast cancer is not enumerated, PAHs are "deemed to be known carcinogens that are reasonably associated with" several other types of cancer, specifically, bladder cancer, NRS 617.453(2)(a); kidney cancer, NRS 617.453(2)(e); lymphatic or haemotopoietic cancer, NRS 617.453(2)(g); and basal cell carcinoma, squamous cell carcinoma, or malignant melanoma, NRS 617.453(2)(h).

The City points out that PAHs are not listed in either the IARC or in the "Known to be Human Carcinogens" section of the NTP. Thus, the City concludes that PAHs cannot be considered known carcinogens for purposes of NRS 617.453(1)(b)(1). We agree.

The IARC divides potentially carcinogenic substances into five categories: carcinogenic, probably carcinogenic, possibly carcinogenic, not carcinogenic, and probably not carcinogenic. PAHs as a general group are not listed in any of these categories, although certain substances within the family of PAHs are listed. Lawson, however, failed to specify what PAHs she was exposed to. Because of that failure, Lawson could not "demonstrate[ ] that [she] was exposed . . . to a known carcinogen as defined by the [IARC]." NRS 617.453(1)(b)(1).

The NTP divides its list into two sections, one listing known carcinogens, and one listing substances reasonably anticipated to be carcinogens. Because PAHs are listed in the "reasonably anticipated" section, and not the "known carcinogen" section, the statute's requirement that PAHs be "a known carcinogen as defined by the . . . [NTP]" is not met. NRS 617.453(1)(b)(1). Therefore, because PAHs are not listed as known carcinogens by either the IARC or the NTP, substantial evidence does not support the appeals officer's conclusion that PAHs are known carcinogens. Therefore, the remainder of our analysis concerns only benzene, which the City concedes is a known carcinogen to which Lawson was exposed.

*Substantial evidence shows that Lawson's exposure to benzene is "reasonably associated" with her breast cancer*

In addition to showing that she was exposed to a known carcinogen in the course of her employment, in order to establish a presumption that her breast cancer arose out of and in the course of her employment, Lawson must also show that the carcinogen to which she was exposed, benzene, is reasonably associated with a disabling cancer. NRS 617.453(1)(b)(2). While subsection 2 of NRS 617.453 lists carcinogens and cancers that are reasonably associated with them, it is not an exclusive list, and subsection 3 allows a claimant to independently show "that a substance is a known carcinogen that is reasonably associated with a disabling cancer." If a claimant can demonstrate such an association, he or she is entitled to a presumption that the cancer arose out of and in the course of the claimant's work as a firefighter. NRS 617.453(5).

In this case, the appeals officer determined that "[t]he reliable, probative and substantial evidence demonstrated . . . that there

was a reasonable association between benzene and PAH's and [Lawson's] breast cancer." We address whether substantial evidence supports the conclusion that benzene, on its own and not in conjunction with PAHs, is reasonably associated with breast cancer.[4] Although the appeals officer referred to exposure to both benzene and PAHs in her final decision, it is clear from the record that Lawson's expert found a reasonable association between benzene, by itself and not in conjunction with PAHs, and breast cancer.

The City first argues that benzene cannot be reasonably associated with breast cancer because both the IARC and NRS 617.453(2) (which lists certain cancers and carcinogens reasonably associated with them) do not specifically link one with the other, but do specifically link benzene to other cancers.[5] However, under NRS 617.453(3), which provides that "any person [may] demonstrat[e], on a case-by-case basis . . . that a substance is a known carcinogen that is reasonably associated with a disabling cancer," the fact that the IARC and subsection 2 do not link benzene to breast cancer is not the end of our inquiry because the claimant can still offer medical evidence to independently demonstrate a reasonable association of a known carcinogen to a disabling cancer.

In this case, Dr. James Melius, one of Lawson's expert witnesses, testified at a hearing before the appeals officer that he has spent more than 25 years studying the health risks firefighters face. After evaluating Lawson's medical records and various scientific studies, Dr. Melius sent a letter to Lawson's counsel, later entered into evidence, in which he opined that "[b]enzene is a potent human carcinogen associated with leukemia, lymphomas, and other cancers. Several studies have found occupational exposure to benzene to be associated with breast cancer risk in both males and females." Dr. Melius testified at the hearing that his opinion remained the same, and he supported his opinion by referencing six scientific studies—five regarding "breast cancer and chemical exposures" and one regarding "exposures of firefighters."

Dr. Melius testified that he heavily relied upon a 2005 study published in the *American Journal of Industrial Medicine* entitled "Mortality in Florida Professional Firefighters, 1972 to 1999" (the Florida study), which he identified as "the largest study of

---

[4]"Reasonably associated" differs from the "causal connection" language found in NRS 617.440 regarding when occupational diseases other than those affecting firefighters are deemed to arise out of and in the course of employment. Whether these terms have different meanings is an issue the parties did not raise, thus we decline to address it here.

[5]Although the IARC does link benzene to certain cancers, it also states that benzene, in general, is carcinogenic to humans. Additionally, breast cancer is not one of the cancers enumerated in NRS 617.453.

firefighters done most recently."[6] Fangchao Ma, M.D., Ph.D., et al., 47 Am. J. Indust. Med. 509 (2005). The Florida study evaluated approximately 35,000 male firefighters and 2,000 female firefighters between 1972 and 1999. Dr. Melius testified that the Florida study indicated "a [sevenfold increase in] risk of breast cancer in male firefighters," however, it also concluded that "[a]mong female firefighters there was no significant increase or decrease of" breast cancer. When the City's expert was questioned about the difference between breast cancer in men and women, he testified that "[t]here is no difference as far as the anatomic or morphologic development of breast cancer. It's the same. It's treated the same. And if it's caught at the same stage, the survival rate is exactly the same, the end result." Thus, the fact that the Florida study found a connection between benzene and breast cancer supports finding a reasonable association, particularly in light of the City's expert's acknowledgment that cancer develops similarly in both men and women.

Additionally, Dr. Melius relied upon an article titled: "Risk of premenopausal breast cancer in association with occupational exposure to [PAHs] and benzene," published in the *Scandinavian Journal of Work, Environment & Health* in 1999. Sandra A. Petralia, Ph.D., et al., 25 Scandinavian J. of Work, Env't & Health 215 (1999). Although this study included a smaller sample size and was not as conclusive as the Florida study, it indicated that there appeared to be a link between exposure to benzene and breast cancer. Dr. Rowan testified that he also relied upon these studies in opining that Lawson's breast cancer was reasonably associated with her exposure to benzene.

After considering all of the evidence presented at the hearings, the appeals officer found that benzene and PAHs were "reasonably associated" with breast cancer. As stated above, although the appeals officer grouped benzene and PAHs together when entering her decision, Dr. Melius stated that benzene, by itself, had a reasonable association with breast cancer. The City argues that the studies relied upon were insufficient to prove the association, and, as such, it was an abuse of discretion for the appeals officer to consider these studies. We disagree. Despite the limitations of some of the studies, we conclude that a reasonable person could have found from the totality of the evidence presented at the hearings that the benzene Lawson was exposed to was reasonably associated with breast cancer. Therefore, the appeals officer did not

---

[6]The City's expert agreed that the Florida study was "the best study available because it covers so many years, and it has the largest number of women."

abuse her discretion in determining that Lawson met her burden of proof and that she is entitled to the rebuttable presumption that the cancer arose out of and in the course of her employment. NRS 617.453(5).

> *The City failed to rebut the presumption that Lawson's breast cancer arose out of and in the course of her employment as a firefighter*

If a claimant establishes that during her employment, she "was exposed . . . to a known carcinogen" and that "[t]he carcinogen is reasonably associated with the disabling cancer," NRS 617.453(1)(b)(1)-(2), then the "[d]isabling cancer is presumed to have developed or manifested itself out of and in the course of the employment." NRS 617.453(5). A party establishes a presumption by demonstrating "the basic facts." *Law Offices of Barry Levinson v. Milko*, 124 Nev. 355, 366, 184 P.3d 378, 386 (2008). When an opposing party adduces evidence to rebut a presumption, "the appeals officer must determine how probable the existence of the presumed fact is." *Id.* "If reasonable people would necessarily agree that the [existence] of the presumed fact is more probable than not," then the opposing party has failed to rebut the presumption. *Id.* Here, the appeals officer found that the City did not present sufficient evidence to rebut the presumption. We agree.

When questioned during the appeals hearing regarding whether he saw a reasonable association between Lawson's exposure to benzene and her breast cancer, the City's expert, Dr. Theodore Potruch, stated that although humans' exposure to benzene has increased dramatically, incidents of breast cancer have not. Dr. Potruch also testified that, in general, he sees no "close connection between exposure to chemicals and the development of breast cancer." Although we recognize the presence of conflicting expert testimony, "[i]t is within the province of the fact finder to weigh the evidence, determine the credibility, and act upon such conclusions." *Olivero v. Lowe*, 116 Nev. 395, 403, 995 P.2d 1023, 1028 (2000). Because sufficient evidence supports the appeals officer's decision, we defer to that decision, and we conclude that the appeals officer did not abuse her discretion.

Similarly, although the City questioned Dr. Potruch regarding the relationships between smoking and breast cancer, and family history and breast cancer, Dr. Potruch never opined that Lawson's breast cancer was more likely caused by one of these stimuli rather than caused by her exposure to benzene in the course of her employment as a firefighter. Although the City's briefs to this court attempt to show that Lawson's cancer arose from something other

than being a firefighter, we decline to discuss those arguments because they were not properly raised below.[7] *See Mason v. Cuisenaire*, 122 Nev. 43, 48, 128 P.3d 446, 449 (2006). Thus, we hold that the City failed to rebut the presumption that Lawson's cancer arose out of and in the course of her employment.

The district court incorrectly found that both benzene and PAHs were known carcinogens—only benzene fits the statutory definition of a known carcinogen. Despite this, the court came to the correct conclusion that Lawson was exposed to known carcinogens that were reasonably associated with breast cancer. This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason. *Rosenstein v. Steele*, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987). Accordingly, we affirm the district court's denial of the City's petition for judicial review.

Douglas and Pickering, JJ., concur.

---

[7]These arguments include Lawson's history of smoking and her sister being diagnosed with breast cancer. As stated above, although the City's expert discussed these issues, he never opined that Lawson's cancer was due to either.