JENNIFER MAE MASON, Executrix of the Estate of ROD E. MASON, DECEASED, Appellant, v. MARTINE CUISENAIRE, Respondent.

No. 40338

February 9, 2006

128 P.3d 446

*Beckley Singleton, Chtd.*, and *Daniel F. Polsenberg* and *Beau Sterling*, Las Vegas; *Mario D. Valencia*, Henderson, for Appellant.

*Law Office of Marshal S. Willick, PC*, and *Marshal S. Willick*, Las Vegas, for Respondent.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we consider whether the district court properly recognized a North Carolina divorce decree and which state's law should be applied in analyzing that decree. We also consider whether a retroactive award of child support may be awarded when the North Carolina decree made no provision for support. We conclude that the North Carolina divorce decree is entitled to full faith and credit and that North Carolina law controls analysis of the decree. We also conclude that because the North Carolina divorce decree made no provision for child support, there was no child support order entered, and therefore, North Carolina law applies and the district court may retroactively award support.

### FACTS

While he was stationed in Belgium with the United States Air Force, appellant Rod Mason met and married respondent Martine Cuisenaire. They remained together for approximately eleven years, when Mason sought a divorce in North Carolina, where the parties were living. The couple's only child, A.M., was nine years old at the time.

In its September 9, 1999, judgment, the North Carolina trial court granted Mason an absolute divorce from Cuisenaire. Additionally, the judgment awarded Cuisenaire primary physical custody of A.M. and awarded Mason visitation every summer. The judgment also stated that "there are no pending claims for post-separation support, alimony, or equitable distribution." Immediately following the divorce, Cuisenaire and A.M. moved to Belgium. Mason eventually was stationed at Nellis Air Force Base in Las Vegas.

At the end of the summer of 2000, Mason failed to return A.M. to her mother's residence in Belgium as the divorce judgment

mandated. Consequently, Cuisenaire filed an action in the Nevada federal district court under the Hague Convention and its implementing legislation, the International Child Abduction Remedies Act.[1] The federal district court determined that the North Carolina judgment awarded Cuisenaire primary physical custody of A.M., that Mason's retention of A.M. was wrongful, and ordered Mason to return the child to Belgium.

In February 2002, Cuisenaire moved the Nevada state district court for post-decree child support, alimony, division of assets, and attorney fees. Cuisenaire sought child support arrears from the date of the North Carolina judgment's entry to the date her motion was filed. She also sought the equitable division of the parties' marital estate as it existed at the time of the divorce. Mason countered that although Cuisenaire had told him that he did not have to pay child support, he had sent child support to Belgium through her brother.

After conducting a hearing, the Nevada district court held that Belgium had jurisdiction over all custody and visitation issues, that the district court had personal jurisdiction over Mason, and that Nevada was the proper venue for child support determinations. The court further determined that the North Carolina court never addressed child support and that, under NRS 125B.030, the district court could award up to four years of past support. The court also found that some omitted assets were not adjudicated in North Carolina, including Mason's military retirement benefits, the proceeds from the sale of a marital home in Louisiana, marital personal property, and a survivors benefit plan. The district court concluded that Cuisenaire was entitled to a portion of Mason's military retirement benefits and set Mason's future child support payments at $500 per month. It also awarded Cuisenaire $300 per month in child support arrears from October 1999, the month after the North Carolina decree was entered, to February 2002 and $500 per month from March 2002 to July 2002,[2] plus statutory penalties and interest. The award of child support arrears totaled $10,678.69, and the district court approved wage withholding in order to collect the arrears. Finally, the district court set an evidentiary hearing with respect to the allocation of debts or assets of the marital estate and denied Cuisenaire's request for alimony.

Mason timely appealed the district court's order before the evidentiary hearing was held. The district court suspended the evidentiary hearing pending the outcome of this appeal. Mason died during the appeal and Jennifer Mae Mason was appointed executrix of his estate.[3]

---

[1] 42 U.S.C. §§ 11601-11610 (2000).

[2] In June 2002, Mason started paying child support of $300 per month.

[3] We note that we have jurisdiction to consider this appeal as a special order after final judgment under NRAP 3A(b)(2), as the district court's order

## DISCUSSION

*Because Cuisenaire failed to demonstrate the North Carolina judgment is invalid based on fraud, lack of jurisdiction, or lack of due process, it is entitled to full faith and credit*

Mason argues that, absent a showing that the North Carolina judgment is invalid, the Full Faith and Credit Clause of the United States Constitution requires that the Nevada state district court respect the North Carolina judgment.

"The full faith and credit clause of the United States Constitution requires that a final judgment entered in a sister state must be respected by the courts of this state absent a showing of fraud, lack of due process or lack of jurisdiction in the rendering state."[4] The district court order made no conclusions as to the validity of the North Carolina judgment and made no findings as to fraud, lack of due process or lack of jurisdiction by the North Carolina court. Accordingly, it appears that the district court implicitly determined that the North Carolina judgment was entitled to full faith and credit.

In her motion for child support and division of assets filed in the court below, Cuisenaire asserted that the North Carolina court violated North Carolina law by failing to divide the marital assets and award child support. Cuisenaire alleged that Mason manipulated her by indicating that he would take care of the divorce paperwork, that their "mutual" attorney would look after her interests and that he would provide child support. Cuisenaire also alleged that Mason told her that, if she questioned the divorce proceedings, he would arrange it so that Cuisenaire would never see her child. Despite describing these allegations in her statement of facts, the record does not reveal that Cuisenaire argued to the district court that Mason fraudulently obtained the divorce decree.

On appeal, Cuisenaire argues that the divorce decree is invalid due to myriad substantive and procedural defects. First, Cuisenaire asserts that Mason falsified the period of separation in the divorce proceedings. However, in her answer to his divorce complaint, Cuisenaire admitted Mason's averment as to the date of separation was correct.

Second, Cuisenaire asserts that the divorce is invalid, or is at least voidable upon collateral attack, because (1) she did not have independent representation; and (2) under North Carolina law,

---

affected the rights and liabilities of the parties under the North Carolina decree. *See Gumm v. Mainor*, 118 Nev. 912, 59 P.3d 1220 (2002).

[4]*Rosenstein v. Steele*, 103 Nev. 571, 573, 747 P.2d 230, 231 (1987); *see also* U.S. Const. art. IV, § 1.

Mason breached his fiduciary duty to Cuisenaire by failing to inform her of his military retirement benefits.[5] She contends that Mason's acts and omissions and his false promises and threats amounted to fraud and duress sufficient to overcome the validity of the judgment as it pertained to property and support issues.

Third, Cuisenaire asserts that the North Carolina judgment is void for lack of due process. Cuisenaire asserts that, while in North Carolina, she signed an acceptance of service of the divorce complaint and that Mason's own notary verified her signature. That same day, however, Mason moved for summary judgment but served Cuisenaire through regular mail at her Belgium address, even though Mason knew that she was in North Carolina. She contends that Mason's attempted service on her in Belgium did not comport with due process.

Cuisenaire did not raise these issues below. Moreover, as noted, the district court did not make any findings in this regard. Cuisenaire requests that, if this court reverses any part of the district court's order, we remand the matter for the district court to determine whether the North Carolina decree is invalid. Generally, failure to raise an argument in the district court proceedings precludes a party from presenting the argument on appeal.[6] Cuisenaire, however, argues that since her due process rights were violated, we should address the issue on appeal.[7] She does not contest the validity of the judgment but, instead, asks this court to remand for further proceedings as to whether the North Carolina judgment was void if we reverse the district court's order. We decline this invitation. Based upon her failure to attack the judgment's basic validity below, the district court properly determined that Cuisenaire had not shown fraud, lack of due process, or lack of jurisdiction.

*As the North Carolina decree is entitled to full faith and credit, North Carolina law controls the award of retroactive child support*

The district court awarded Cuisenaire both current child support and child support arrears. Mason only attacks the award of retroac-

---

[5]*Sidden v. Mailman*, 529 S.E.2d 266, 273 (N.C. Ct. App. 2000). In *Sidden*, the parties obtained a divorce and entered into a settlement agreement purporting to divide all of their community property. Several months after the final divorce, the husband discovered that he inadvertently omitted an asset and called his ex-wife in order to figure out how to divide the asset. The appellate court determined that there was some evidence that the husband breached his fiduciary duty for purposes of a fraud claim and remanded the matter for further findings. *Id.*

[6]*Nye County v. Washoe Medical Center*, 108 Nev. 490, 493, 835 P.2d 780, 782 (1992).

[7]*Desert Chrysler-Plymouth v. Chrysler Corp.*, 95 Nev. 640, 643-44, 600 P.2d 1189, 1191 (1979) (explaining that this court generally declines to hear

tive child support, arguing that the district court erred when, in doing so, it interpreted and applied NRS 125B.030. We conclude that the district court abused its discretion in applying NRS 125B.030 because the statute is inapplicable to the parties. An award of retroactive child support, however, was proper because the North Carolina decree is entitled to full faith and credit.

### Application of NRS 125B.030

The district court awarded retroactive support to Cuisenaire under NRS 125B.030. We conclude that this was an abuse of discretion. NRS 125B.030 states:

> Where the parents of a child are separated, the physical custodian of the child may recover from the parent without physical custody a reasonable portion of the cost of care, support, education and maintenance provided by the physical custodian. In the absence of a court order, the parent who has physical custody may recover not more than 4 years' support furnished before the bringing of the action.[8]

We conclude that "separated," as used in NRS 125B.030, does not include parties who have previously been adjudicated as divorced but attempt to recover child support for a period after their divorce became final. This view is consistent with our statutory scheme, which provides a remedy for the recovery of child support post-divorce.[9] During a period of separation before divorce, a custodial parent may recover from a noncustodial parent support arrears based on the period of time the noncustodial parent was not supporting the children. Although the statute appears to apply to couples who have never been married, we reserve determination of that question for future consideration.

---

issues not raised below but that constitutional issues may be considered for first time on appeal).

[8]We have addressed NRS 125B.030's application in only one prior opinion. We concluded that NRS 125B.030 applied to the period between the parties' decision to obtain a divorce, when no support order existed, and their formal dissolution of marriage. In reviewing the district court's order, we noted that a "court may not modify or nullify a preexisting duty for support" when resolving actions filed under the Uniform Reciprocal Enforcement of Support Act (URESA). *Nicholson v. Nicholson*, 107 Nev. 279, 280, 809 P.2d 1267, 1268 (1991). We determined that, in *Nicholson*, the district court, in granting child support arrears to the ex-wife, had impermissibly "modified a preexisting duty of support" and, therefore, reversed the district court's award of arrears. *Id.*

[9]*See generally* NRS 125B.080; NRS 125B.095; NRS 125B.140.

*Retroactive claim for support*

Questions of statutory construction are reviewed de novo.[10] When construing statutes, this court seeks to give effect to the Legislature's intent.[11] To do this, the court first examines the language used, and if the statute is plain and unambiguous, this court will give the language its ordinary meaning and not go beyond it.[12] But if a statute is susceptible to more than one interpretation, or if it otherwise does not speak to the issue at hand, it is ambiguous, and the plain meaning rule has no application.[13]

Mason argues that, because the North Carolina decree is entitled to full faith and credit, we must examine North Carolina law in determining whether the trial court properly awarded retroactive child support. We agree.

North Carolina General Statute section 50-11.2 provides that the judgment in a divorce action "may" provide for child support upon proper pleading and notice:

> Where the court has the requisite jurisdiction and upon proper pleadings and proper and due notice to all interested parties the judgment in a divorce action *may* contain such provisions respecting care, custody, tuition and maintenance of the minor children of the marriage as the court may adjudge . . . .

(Emphasis added.) Cuisenaire neither filed a complaint seeking child support nor moved for support during the divorce proceeding. In its order, the North Carolina court stated, "[T]here are no pending claims for post-separation support, alimony or equitable distribution." No North Carolina case addresses the issue of whether a divorce judgment that does not contain an ordered amount of child support constitutes a child support order. We therefore look elsewhere to determine whether a divorce judgment that does not include an amount for child support constitutes a support order.

In *Willers ex rel. Powell v. Willers*, the Nebraska Supreme Court construed a Nebraska statute with optional language similar to the North Carolina statute.[14] *Willers* involved a wife who had filed for,

---

[10]*See State, Dep't Mtr. Veh. v. Jones-West Ford*, 114 Nev. 766, 772, 962 P.2d 624, 628 (1998).

[11]*Cleghorn v. Hess*, 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993).

[12]*City Council of Reno v. Reno Newspapers*, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989).

[13]*Executive Mgmt. v. Ticor Title Ins. Co.*, 118 Nev. 46, 50-51, 38 P.3d 872, 875 (2002).

[14]587 N.W.2d 390, 397 (Neb. 1998).

and obtained, a divorce in Washington. The Washington court did not order support at the time because it assumed that it did not have jurisdiction over the husband who resided in Nebraska.[15] The *Willers* court considered a Nebraska statute providing that " '[a]n action for child support . . . *may* be brought in the district court separate and apart from any action for dissolution of marriage. Such action for support *may* be filed on behalf of a child . . . [w]hose paternity has been established . . . by the marriage of his or her parents.' "[16] The Nebraska court concluded:

> We are cognizant that the general rule in Nebraska has been to allow a modification of a child support order prospectively from the time of the modification itself. See *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991). The case at bar, however, does not involve a modification order. It involves the legal enforcement of the parental duty to support where the divorce decree contained no order of support.
>
> Our conclusion is amply supported by decisions from other jurisdictions holding that such a proceeding is not a modification proceeding. See, *Warren v. Hart*, 747 P.2d 511 (Wyo. 1987); *Williams v. Williams*, 498 S.W.2d 585 (Mo.App.1973), *overruled on other grounds* 510 S.W.2d 452 (Mo.1974). See, also, *Scaling v. Scaling*, 805 P.2d 866, 870 (Wyo.1991) (holding that decree silent on issue of child support is "not a motion to modify; rather '[i]t is merely ancillary or supplemental . . .' "); *Armstrong v. Sparks*, 360 So.2d 1012 (Ala.Civ.App.1978) (holding that where decree is silent as to support, there is nothing for court to modify, and action for support should have been treated as supplementary petition). See, e.g., *Marriage of Nelson*, 27 Or.App. 167, 555 P.2d 806 (1976); *Wacaster v. Wacaster*, 220 So.2d 914 (Fla.App.1969); *Wiles v. Wiles*, 211 Or. 163, 315 P.2d 131 (1957); *Effland v. Effland*, 171 Kan. 657, 237 P.2d 380 (1951); *Mack v. Mack*, 91 Or. 514, 179 P. 557 (1919); *Gibbons v. Gibbons*, 75 Or. 500, 147 P. 530 (1915).[17]

The *Willers* court thus concluded that, when a divorce decree is silent on the issue of child support, support may still be ordered and enforced retroactively to the date of the divorce decree.[18]

We conclude that the North Carolina statute is similar to the statute analyzed in *Willers* and agree with the *Willers* court that a

---

[15]*Id.* at 393.

[16]*Id.* at 395 (quoting Neb. Rev. Stat. § 43-512.04(1) (1997)) (emphases added).

[17]*Id.* at 397.

[18]*Id.*

divorce decree that is silent regarding child support does not preclude a retroactive award of child support. Some jurisdictions have concluded that it would be unfair to award retroactive support and that a party is only entitled to a prospective award.[19] That position is acknowledged as the minority view,[20] and we decline to follow it in light of strong statutory and public policy requiring parents to support their children through the age of majority.[21] In the absence of jurisdictional or waiver issues, a retroactive award of child support may be made when no support order exists.[22]

Accordingly, the district court had authority to award retroactive child support in this case. However, as discussed above, the district court abused its discretion in awarding post-decree child support under NRS 125B.030 because that statute would only permit pre-decree support for the parties in this context. But, based upon our conclusions above, a retroactive child support award is appropriate from the date of the North Carolina decree. Thus, we remand the matter for the district court to enter an appropriate child support award consistent with this holding.

## CONCLUSION

We conclude that the district court did not err in affording the North Carolina divorce judgment full faith and credit and that a retroactive award of child support is proper from the date of the North Carolina decree. We conclude, however, that an award of child support arrearages under NRS 125B.030 was not proper, and we therefore reverse that portion of the district court's order pertaining to child support arrears. We remand for the district court to determine the appropriate amount of child support arrears, applying North Carolina child support guidelines.

We decline to review the issues concerning military retirement and survivor benefits. In response to our order requesting the parties to identify any issues rendered moot by Mason's death, the parties indicated that the retirement benefits issue was moot. Although the parties requested that this court consider the issue as one capable of repetition, we decline to do so. Additionally, the district court made no determination of the survivor benefits issue, having reserved the matter for consideration during the evidentiary

---

[19]*See, e.g., Meyer v. Meyer,* 478 N.E.2d 806, 808-09 (Ohio 1985).

[20]*Id.* at 808.

[21]*See* NRS 125B.020.

[22]Mason further argues that Cuisenaire should be equitably estopped from claiming child support arrears. This court has previously held ''that additional equitable defenses such as estoppel or waiver may be asserted by the obligor in a proceeding to enforce or modify an order for child support or . . . to reduce child support arrearages to judgment.'' *Parkinson v. Parkinson,* 106 Nev. 481, 483, 796 P.2d 229, 231 (1990). Mason failed to make this argument below, and this court need not consider the issue.

hearing. On remand, the district court shall conduct an evidentiary hearing and determine the extent that survivor benefits apply to the parties.

ROSE, C J., BECKER, GIBBONS, MAUPIN, DOUGLAS and HARDESTY, JJ., concur.